# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2151

_____

| | |
|---|---|
| Peter J. Sallas, | * |
| | * |
| Petitioner, | * On Petition for Review |
| | * of an Order of the Railroad |
| v. | * Retirement Board |
| | * |
| Railroad Retirement Board, | * [To Be Published] |
| | * |
| Respondent. | * |

_____

Submitted: March 3, 2000

Filed: May 1, 2000

_____

Before RICHARD S. ARNOLD, BOWMAN, and BEAM, Circuit Judges.

_____

PER CURIAM.


Peter J. Sallas petitions for review of the decision of the Railroad Retirement Board (RRB) denying a waiver of recovery of overpaid benefits. We grant Mr. Sallas's petition and reverse the RRB's decision.

Mr. Sallas, born on April 18, 1922, was a railroad employee from May 1956 through May 31, 1984. For several years, he had also worked part-time as a clerk at Berbiglia, Inc., a liquor store. Mr. Sallas quit his Berbiglia employment in April 1984

because his railroad employment caused him to travel to Kansas, Colorado, Nebraska, and Missouri. Mr. Sallas's railroad employer subsequently advised him that his office was moving from Kansas City, Missouri, to Omaha, Nebraska. This proposed move induced Mr. Sallas to accept a "buy-out" from his railroad employer, and he took early retirement. In June 1984, Mr. Sallas applied to the RRB for an employee annuity; he did not list his Berbiglia employment as a non-railroad job held during the last twelve months that he had worked in the railroad industry. Mr. Sallas was awarded benefits.

In 1985, Berbiglia's owner asked Mr. Sallas to come back, and he began working for Berbiglia again. Although he did not inform the RRB that he had gone back to work, in 1990 he contacted the RRB by telephone to inform it that he had exceeded his earnings limit. In June 1991, Mr. Sallas's spouse applied for and received a spouse annuity.

In a December 1994 letter, the RRB notified Mr. Sallas that (1) under the provisions of the 1974 Railroad Retirement Act (Act), 45 U.S.C. §§ 231, 231a-231u, he was ineligible to receive an annuity from June 1984 through November 1998 because he had failed to cease all compensated service for his last preretirement non-railroad employer (LPE),[1] namely, Berbiglia; (2) although a December 1988 amendment to the Act allowed Mr. Sallas to continue working for his LPE, post-amendment employment with the LPE still had the effect of reducing his benefits; and (3) he was not entitled to a supplemental annuity because his continuing work for Berbiglia had broken his "current connection" with the railroad. The RRB concluded that Mr. Sallas had received an overpayment of $87,494.06 in railroad retirement benefits, which he had to repay. The RRB likewise notified Mrs. Sallas that she would

---

[1]The RRB also refers to this as "last person" employment. See 45 U.S.C. § 231a(e)(3) (1982); Davenport v. Railroad Retirement Bd., 453 F.2d 185, 187 (5th Cir. 1972).

be responsible for repayment of a $2,738.60 overpayment. The Sallases requested review and waiver of recovery.

Following a hearing, the hearing officer found that Mr. Sallas had a net overpayment of $38,625.40; partial recovery (the difference between the erroneous payment and Mr. Sallas's Berbiglia earnings for the years prior to 1988) was waived because the Act's 1988 amendment allowed an annuitant to work for his last non-railroad employer. The hearing officer concluded, however, that recovery of the $38,625.40 could not be waived because Mr. Sallas was at fault in causing the overpayment. Specifically, the officer found that (1) Berbiglia was Mr. Sallas's LPE before his railroad retirement; and (2) Mr. Sallas had acted negligently when he failed to disclose his Berbiglia employment on his annuity application, and his negligence had "caused the overpayment because it interfered with the [RRB's] efforts to put him on notice that returning to work [for] this last employer, even if he had low earnings, would impact his annuity." The officer found that Mrs. Sallas had a net overpayment of $3,889.54, and that recovery would not be contrary to the purpose of the Act, or against equity or good conscience.

In January 1999, a majority of the RRB affirmed the hearing officer's decision with respect to Mr. Sallas, but remanded as to Mrs. Sallas for a supplemental decision as to "whether recovery of her overpayment would be contrary to the purpose of the Act or against equity or good conscience, specifically taking into consideration recovery of the overpayment from Mr. Sallas." One member dissented, stating that he did not consider Mr. Sallas's employment with Berbiglia to be "last pre-retirement employment." Noting that Mr. Sallas had quit this non-railroad employment because it conflicted with his railroad work schedule, and that he had not intended to retire from the railroad when he did but was induced to so do by a "buy-out" offer, the dissenting member concluded that Mr. Sallas did not quit Berbiglia for the purpose of retirement.

Our review of an RRB decision is limited to determining whether it " 'is supported by substantial evidence, is not arbitrary, and has a reasonable basis in law.' " See King v. Railroad Retirement Bd., 981 F.2d 365, 367 (8th Cir. 1992) (per curiam) (quoted case omitted). In the absence of fraud, we affirm the RRB's findings of fact if they are supported by the evidence. See id.

Prior to December 1, 1988, to become entitled to a retirement annuity, an individual had to cease all railroad employment, and all compensated service for any LPE, as shown by the following language in the Act:

> (1) No individual shall be entitled to an annuity under subsection (a)(1) of this section until he shall have ceased to render compensated service to any person, whether or not an employer defined in section 231(a) of this title. . . .
>
> . . .
>
> (3) No annuity under subsection (a)(1) of this section . . . shall be paid with respect to any month in which an individual in receipt of an annuity . . . thereunder shall render compensated service to an employer or to the last person, or persons, by whom he was employed prior to the date on which the annuity . . . began to accrue.

45 U.S.C. § 231a(e) (1982). Effective December 1, 1988, this section was revised so that the retiree no longer has to stop working for his LPE to receive an annuity, although benefits will be reduced if the retiree does not do so. See 45 U.S.C. § 231a(e) (1994).

We conclude that substantial evidence does not support the RRB's finding that Berbiglia was Mr. Sallas's LPE, because his uncontroverted testimony was that he quit

Berbiglia in April 1984 because of the increased travel requirements of his railroad employment, and that he did not intend to retire when he did, but was induced to do so by a buy-out offer after being informed that he was being transferred to Omaha.[2] See 20 C.F.R. § 216.22(b) (1999) (individual's LPE is any non-railroad employer from whom individual last resigned in order to receive an annuity; in absence of evidence to contrary, employment terminated within 6 months of annuity application is presumed to be service from which individual resigned in order to receive annuity).

Because our determination that Berbiglia was not Mr. Sallas's LPE results in the conclusion that no overpayment of benefits occurred, the RRB incorrectly denied Mr. Sallas's request for waiver of recovery.

Accordingly, we reverse the decision of the RRB.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS EIGHTH CIRCUIT.

---

[2]The RRB argues that Berbiglia's status as an LPE is not properly before us, because Mr. Sallas limited his arguments below to the waiver issue. However, as discussed, the dissenting member's opinion in the RRB's decision squarely addresses this issue.